J-S06032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL WHITMIRE | : | |
| | : | |
| Appellant | : | No. 1618 EDA 2020 |

Appeal from the PCRA Order Entered July 25, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001673-2014

BEFORE: PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: Filed: March 25, 2021

Michael Whitmire (Whitmire) appeals *pro se* from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541-9546, in the Court of Common Pleas of Philadelphia County (PCRA court). He claims that the court erred in denying his post-sentence motion because his conviction was against the weight of the evidence, that it was against the sufficiency of the evidence, and that trial counsel provided ineffective assistance when he failed to object to the admission of a Facebook video at trial. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

We take the following factual background and procedural history from our independent review of the record, this Court's April 21, 2016 opinion and the PCRA court's October 16, 2020 opinion.

**A.**

In January 2013, Whitmire and Jamillah Reed (Reed) met online on Talking.com and discussed getting together to use crack cocaine and have sex. Reed had been acquiring crack cocaine from Antiquon Greer (Greer) since 2012. On January 19, 2013, Whitmire and Reed met at Whitmire's Fairmount Avenue home where he lived with his grandfather to smoke crack cocaine and have sex. Reed would contact Greer and he would deliver it to Whitmire's home in his red minivan. When Reed again obtained crack cocaine the next morning, January 20, 2013, Greer told her to give Whitmire his phone number so he could contact Greer directly.

Whitmire and Reed left the Fairmount home on the morning of January 20, 2013, and spent the day smoking crack cocaine at a nearby hotel. Reed ordered $300 worth of the drugs later in the afternoon, which Greer agreed to deliver to the hotel. Whitmire told Reed he was going back home for money, but then called her approximately ten minutes later requesting that she ask Greer to deliver the crack cocaine to his Fairmount home instead. Reed called Greer and he agreed to meet Whitmire at the Fairmount address.

Whitmire then called Greer from his home's landline at 5:18 p.m. Meanwhile, Reed made several calls to Greer while waiting for Whitmire to return. Greer did not answer. When Whitmire returned to the hotel, he looked "deranged" and sweaty and told Reed that Greer never showed up. Reed again unsuccessfully attempted to reach Greer on the phone. Whitmire left the hotel sometime after 6:30 p.m.

At approximately 7:42 p.m., while on routine patrol, Officer Jeffrey Holden discovered Greer's body in his red minivan one block from the hotel. Greer had been fatally shot in his face and neck at close range, his pockets were turned out and he had a packet of crack cocaine in his fist. Police recovered one cartridge casing from inside the vehicle and a fired projectile outside the vehicle.

The PCRA court explains:

On April 2, 2013, Reed provided a statement to police. Reed further provided police with her cell phone number as well as phone numbers for Greer and [Whitmire]. Reed also identified [Whitmire] as the person she was with on the day that Greer was shot. Police obtained additional search warrants for [Whitmire's] phone records, which showed that a call had been made to Greer on January 20, 2013, from the [his] home landline just prior to Greer's death. Police contacted [Whitmire] on April 8, 2013 and asked him to come in to police headquarters. However, despite agreeing to come in, [Whitmire] did not meet with police at the scheduled time.…

On May 2, 3, and 22, 2013, [Whitmire] contacted Reed via Facebook and asked Reed to call him to talk about Greer. … A short time after talking with [Whitmire] on May 22, Reed saw a video that [Whitmire] had posted on his Facebook page where [he] was handling a gun. The firearm in the video was a Glock

Model 21 .45 caliber semiautomatic pistol. The video also showed [Whitmire] handling Hornady Critical Defense FTX ammunition.

Police executed a search warrant for [Whitmire's] Facebook account, and based on the handgun video, [he] was arrested on firearm charges on June 27, 2013. When questioned by police concerning the video, [Whitmire] admitted he was the person in the Facebook video and that he possessed the firearm. Subsequent investigation showed that the video was created on January 13, 2013, one week prior to Greer's murder. When [Whitmire] was questioned by police concerning Greer's murder, [he] stated that "if he told [police] what happened, that his life would be over and that he would no longer see his grandfather." (N.T. Trial, 4/29/15, at 83, 86). He also stated he was in the area at the time of the murder with a female, and that he was purchasing narcotics from Greer.

(PCRA Court Opinion, 10/16/20, at 5-6) (most record citations omitted; some paragraphing provided).

**B.**

Trial commenced on April 27, 2015. Officer Norman DeFields, a trained and experienced expert in firearms identification and ballistics, testified that the fired cartridge casing (FCC) recovered from the scene was from a .45 caliber automatic cartridge manufactured by Hornady and that, based on the Glock-type firing pin impression on the FCC, the FCC was consistent with having been fired from a .45 caliber Glock automatic pistol. He also testified that the recovered projectile was a .45 caliber and consistent with a Hornady Critical Defense FTX bullet, which was a "new design," "premium," and "more expensive" than average ammunition. (N.T. Trial, 4/30/15, at 23, 28). He also confirmed that Whitmire was handling a Glock Model 21 .45 caliber

- 4 -

semiautomatic pistol and Hornady Critical Defense FTX ammunition in the Facebook video taken a week before the murder.

On May 1, 2015, a jury convicted Whitmire of murder of the second degree, robbery-infliction of bodily injury, carrying a firearm on the streets of Philadelphia, possession of an instrument of crime with intent and firearms not be carried without a license.[1]

On direct appeal, Whitmire challenged the weight of the evidence supporting his conviction, arguing, "no eyewitness testimony connected him to the murder and any DNA, fingerprint or blood splatter evidence against him was either nonexistent or easily explained. He also aver[red] that the main witness against him, Jamillah Reed, was not credible as she was an admitted liar and thief." (*Commonwealth v. Whitmire*, 2016 WL 1604433, unpublished memorandum, at *1 (Pa. Super. filed Apr. 21, 2016)) (record citation and internal quotation marks omitted). This Court affirmed the judgment of sentence on April 21, 2016, concluding that "[t]he evidence … plainly established that [Whitmire] committed the crimes of which he was convicted. While [he] attempts to shift the blame of Greer's murder onto Reed, there is no evidence to suggest that Reed perpetrated this crime. [T]he evidence fully supported the verdict[.]" (*Id.* at *9). On November 1, 2016,

_____

[1] 18 Pa.C.S. §§ 2502(b), 3701(a)(1), 6108, 907(a) and 6106(a)(1), respectively.

the Pennsylvania Supreme Court denied further review. (*See* *Commonwealth v. Whitmire*, 160 A.3d 775 (Pa. 2016)).

On November 6, 2017, Whitmire filed a *pro se* PCRA petition in which he stated that he was not guilty, challenged a jury instruction as constitutionally defective, claimed that appellate counsel was ineffective in litigating a sufficiency argument, argued that trial counsel was ineffective for failing to: move to suppress the Facebook video and his statement to police, investigate the case, including Reed and phone records, provide a reasonable defense and move for funds for an investigator and an expert medical examiner. (*See* Memorandum in Support of *Pro Se* PCRA Petition, 11/06/20, at 4, 8, 12, 16-25).

The court appointed Attorney David S. Rudenstein on June 7, 2013. Attorney Rudenstein filed a *Turner*/*Finley*[2] no merit letter and motion to withdraw on September 13, 2018, in which he found Whitmire's PCRA claims frivolous since he failed to identify why the jury instructions were legally deficient and trial counsel was not ineffective where: Whitmire did not identify specific instances of ineffective representation, the search of the Facebook account was legal because Whitmire had no privacy interest in it, there was no basis on which to challenge the affidavit in support of the search warrant

---

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

for the cell phone, and Whitmire failed to aver what new information any further investigation would have revealed. (**See Turner**/**Finley** Letter, 9/13/18, at 11-14).

On August 14, 2019, Attorney Rudenstein filed a second **Turner**/**Finley** letter addressing concerns raised in Whitmire's correspondence to him after the initial **Turner**/**Finley** letter. He advised that, after his review of the record, trial counsel was not ineffective for failing to submit Reed's DNA evidence where there was nothing in the record to show she was the murderer, and admission of the evidence would not have exonerated him, his damaging statement to the police could not have been suppressed, although he stated Reed could provide information to exonerate him, Whitmire failed to provide her contact information to Attorney Rudenstein, there was no arguable merit to his claim that the affidavit supporting the search warrant for his cell phone was legally insufficient and appellate counsel was not ineffective where he argued everything he could on Whitmire's behalf. (**See Turner**/**Finley** Letter, 8/14/2019, at 11-13). On September 26, 2019, the PCRA court notified Whitmire of its intent to dismiss the PCRA petition without a hearing.

Whitmire responded on October 21, 2019, arguing that the police lacked a warrant to search his Facebook account and the assistant district attorney on his case was fired and part of a DNA scandal. On January 9, 2020, Attorney Rudenstein filed a third **Turner**/**Finley** letter addressing Whitmire's response and noted that the issues raised therein lacked merit where the police had a

search warrant for the Facebook account and he was not aware of any firing of the prosecutor on his case or of a "DNA scandal." (***See Turner/Finley*** Letter, 1/09/20, at 1-3). On January 20, 2020, the PCRA court again provided Whitmire with Rule 907 Notice of its intent to dismiss the petition without a hearing. Whitmire responded on March 11, 2020, claiming that PCRA counsel was ineffective because he filed three ***Turner/Finley*** letters to address his issues and reached conclusions with which Whitmire disagreed.

On April 15, 2020, Attorney Rudenstein passed away, and the court appointed Attorney Gary Sanford Server who entered his appearance on June 10, 2020. On July 7, 2020, after its own independent review and based on the ***Turner/Finley*** letters, the court denied Whitmire's PCRA petition as

frivolous and granted Attorney Server leave to withdraw.[3]   Whitmire timely[4]

appealed *pro se*.[5]   We denied his application for appointment of counsel based

_____

[3] Initially, this Court listed Attorney Server as representing Whitmire because there was no indication on the trial court docket that he filed a **_Turner_**/**_Finley_** letter or request to withdraw as counsel.  On September 9, 2020, Attorney Server sent a letter informing the Court that the July 7, 2020 order granted him leave to withdraw.  Although the trial court docket still reflects Attorney Server as appointed counsel, because Attorney Rudenstein fully complied with the mandates of **_Turner_**/**_Finley_** and the court dismissed Whitmire's petition as frivolous, Whitmire was not entitled to further representation on this PCRA petition.  **_See Commonwealth v. Maple_**, 559 A.2d 953, 956 (Pa. Super. 1989) (the appointment of second counsel after original post-conviction counsel has been permitted to withdraw pursuant to **_Turner_**/**_Finley_** is unnecessary and improper).  Although this Court could remand for Attorney Server to formally withdraw, under the circumstances of this case where the PCRA court has already directed the withdrawal, and in the interest of judicial economy, we will treat as done what ought to have been done and consider the merits of Whitmire's appeal.

[4] The PCRA court's docket reflects that Whitmore's Notice of Appeal was filed on August 11, 2020, and identified the court's order from which he was appealing as having been filed on July 25, 2020.  We issued a Rule to Show Cause why the appeal should not be quashed because, according to the PCRA court docket, no order was entered on July 25, 2020, and, alternatively, if Whitmore intended to appeal from the July 7, 2020 order, why it was not untimely.  Whitmore responded that the correct order date was July 7, 2020, and that he mailed the Notice of Appeal on July 25, 2020, and it was timely.  Upon receipt of Whitmore's response, the Rule was discharged and the issues referred to the merits panel.

We observe that, although the notice had the wrong order date, this appears to have been inadvertent and did not affect the notice's validity.   **See** Pa.R.A.P. 902 ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal. …").  We have amended the caption accordingly.

Additionally, although the postage date for the notice is illegible in the copy provided to this Court, the certificate of service reflects that Whitmore provided it to prison authorities for mailing on July 25, 2020.  Thus, pursuant

on **_Maple_**, **_supra_**.  Both he and the court have complied with Rule 1925.  **_See_**

Pa.R.A.P. 1925.  In his Rule 1925(b) statement, Whitmire challenges the

weight and sufficiency of the evidence, as well as trial counsel's failure to

object to the Facebook video.  (**_See_** Rule 1025(b) Statement, 10/09/20).[6]

In his brief, which is almost a verbatim copy of the one filed in his direct

appeal, Whitmire raises the following issue for our review:  "Did the trial court

err in denying [his] post-sentence Motion because [his] conviction is against

the weight of the evidence in that all of the evidence against [him] was

circumstantial and speculative and did not surpass the reasonable doubt

standard?"  (Whitmire's Brief, at 4).[7]  He maintains that "[t]here is no

eyewitness testimony and any physical evidence tying [him] to the murder of

_____

to the Prisoner Mailbox Rule, it is timely.  **_See Commonwealth v. DiClaudio_**, 210 A.3d 1070, 1074 (Pa. Super. 2019) ("[T]he prisoner mailbox rule provides that a pro se prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing.").

[5] "Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."  **_Commonwealth v. Saunders_**, 226 A.3d 1019, 1021 (Pa. Super. 2020) (citations and internal quotation marks omitted).

[6] Whitmire attached the Rule 1925(b) statement filed in his direct appeal to his brief.  However, the Rule 1925(b) statement filed in this appeal was part of the certified record provided to this Court.

[7] This is the same issue raised in his brief and Rule 1925(b) statement filed in Whitmire's direct appeal.  (**_See Whitmire_**, **_supra_** at *8).

[Greer], including DNA and bullet evidence, was speculative and easily explained" and that "Reed, the main witness against [him] was an admitted liar and thief." (*Id.* at 7-8).

## II.

Pursuant to Section 9543 of the PCRA, to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence one of the following grounds for relief:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

### A.

We initially observe that the sufficiency of the evidence issue is not a cognizable PCRA claim that could afford Whitmire relief. **See** 42 Pa.C.S. § 9543(a)(2). Moreover, even if it were a valid PCRA claim, it would be waived for Whitmire's failure to address it in his brief. **See Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa. Super. 2002), *appeal denied*, 827 A.2d 430 (Pa. 2003) ("[I]ssue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived."). Therefore, Whitmire is not entitled to relief on this claim.

### B.

Next, we note that like his sufficiency of the evidence issue, Whitmire's weight of the evidence challenge likewise is not a valid claim entitling him to PCRA relief. **See** 42 Pa.C.S. § 9543(a)(2). Additionally, it is well settled that a petitioner is not eligible for relief under the PCRA where his claim has been previously litigated. **See** 42 Pa.C.S. § 9543(a)(3). An issue is previously litigated "where highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2).

As stated previously, Whitmire's brief raises the same weight of the evidence issue as he did in his direct appeal. (**Compare Whitmore**, **supra** at *1 **with** Whitmire's Brief, at 4). This Court concluded there was no merit

to Whitmire's contention "that the jury's verdict of guilt is against the weight of the evidence because there was no eyewitness testimony or forensic evidence connecting defendant to the murder and because witness Jamillah Reed was the likely perpetrator." (*Id.* at *8) (record citation omitted). Therefore, because we previously addressed the weight of the evidence issue in his direct appeal, Whitmire would not be eligible for relief, even if this issue could form the basis of a valid PCRA claim.

**C.**

Next, we turn to Whitmire's allegation of ineffective assistance of counsel, which is a cognizable PCRA claim. *See* 42 Pa.C.S. § 9543(a)(2)(ii). In his Rule 1925(b) statement, Whitmire claims that trial counsel was ineffective for not objecting to the Facebook video of him handling a firearm because "[i]n the video [he] was not at the crime scene," "committing a crime," or "talking about a crime." (Rule 1925(b) Statement, at 2). He maintains the video was "highly prejudicial," with no probative value, and that "any reasonable attorney" would not have allowed its admission at his murder trial. (*Id.* at 2-3). Although Whitmire waived this claim by abandoning it in his brief and by raising this argument for the first time on appeal,[8] we conclude

---

[8] Specifically, in his memorandum in support of his PCRA petition, Whitmore argued that the Facebook video should have been suppressed because it was illegally obtained from Reed before the police acquired the search warrant. (*See* Memorandum of Law in Support of PCRA Petition, 11/06/17, at 17-19).

that it would not merit relief. **See Heggins**, **supra** at 912 n.2; **Commonwealth v. Santiago**, 855 A.2d 682, 691 (Pa. 2004) (PCRA petitioner cannot raise new claims on appeal not raised in PCRA court); **see also** Pa.R.A.P. 302(a).

In considering an ineffective assistance of counsel claim, we observe first that counsel is presumed effective and that a petitioner bears the burden to prove otherwise. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014). To establish an ineffectiveness claim, a defendant must prove:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

**Id.** (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim. When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." **Id.** (citations and internal quotation marks). Finally, counsel will not be found ineffective for failing to raise a meritless claim. **See id.**

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by

---

He failed to raise the argument he now advances at any time in the PCRA court.

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. 2019), *appeal denied*, 219 A.3d 597 (Pa. 2019) (internal quotation marks omitted). "A weapon not specifically linked to the crime is generally inadmissible; however, the fact the accused had a weapon or implement suitable to the commission of the crime charged ... is always a proper ingredient of the case for the prosecution." *Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (internal quotation marks and citation omitted).

Here, Greer was murdered by a Hornady Critical Defense FTX type bullet fired from a .45 Glock automatic pistol. Officer DeFields testified these bullets were of a "new design," "premium," and "more expensive" than average ammunition. The Facebook video introduced by the Commonwealth was recorded within a week of the murder and depicted Whitmire handling what Officer DeFields identified as a Glock Model 21 .45 caliber semiautomatic pistol and Hornady Critical Defense FTX bullets. The PCRA court explained the video evidence was relevant because it "was extremely compelling evidence that [Whitmire] had access to a firearm and ammunition consistent with that used in the murder. It was, therefore, highly probative evidence of [his] identity as the shooter." (PCRA Court Opinion, 10/16/20, at 9).

We agree with the PCRA court. Because the Facebook video showed that Whitmire possessed the weapon and ammunition that matched the type

used to murder Greer in this case, it was "a proper ingredient of the case for the prosecution," and trial counsel will not be held ineffective for failing to object to its proper admission. **Christine**, **supra** at 400; **see Fears**, **supra** at 804. Hence, even if this issue were not waived, it would not merit relief.

Accordingly, we affirm the PCRA court order denying Whitmire's petition.[9]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/25/21

_____

[9] Moreover, although Whitmire claimed in his responses to the Rule 907 Notices that PCRA counsel was ineffective in his review of Whitmire's issues and in drafting his **Turner**/**Finley** letters, he failed to raise this ineffectiveness claim on appeal and, therefore, has waived it for our review. Additionally, we note that our independent review reveals that although PCRA counsel filed three **Turner**/**Finley** letters, they collectively addressed Whitmire's claims adequately. Therefore, the record supports the PCRA court's order denying Whitmore's petition and granting counsel leave to withdraw. **See Saunders**, **supra** at 1021.